Filed 3/19/14  P. v. Sanchez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LEONARDO ERNESTO SANCHEZ,<br><br>    Defendant and Appellant. | E056448<br><br>(Super.Ct.Nos. RIF1101670 &<br>       RIF1104101)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  David A. Gunn, Judge.
Affirmed.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and
Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney
General, Julie L. Garland, Assistant Attorney General, William M. Wood, Marilyn L.
George, and Teresa G. Torreblanca, Deputy Attorneys General, for Plaintiff and
Respondent.

1

Following the denial of his renewed motion to suppress evidence, defendant, Leonardo Sanchez, pled guilty to possessing marijuana for sale (Health & Saf. Code, § 11359), transporting marijuana (Health & Saf. Code, § 11360) and failure to yield to a police officer (Veh. Code, § 2800.2). He also admitted suffering two prison priors (Pen. Code, § 667.5, subd. (b)) and two strike priors (Pen. Code, §§ 667, subds. (c) & (e)). The trial court dismissed one of his strikes and he was sentenced to prison for 11 years, four months. He appeals, contesting the denial of his motion to suppress evidence. We reject his contentions and affirm.

FACTS, ISSUES AND DISCUSSION

A special agent from the United States Department of Homeland Security (hereinafter, "special agent") testified at the preliminary/first motion to suppress hearing that he was assisting a local police department in surveilling a townhouse in Riverside on March 2, 2011. Three cars, including a van, entered the gated townhouse community in tandem, which "signaled that there may be narcotics entering the residence at that time." The vehicles left the house, also in tandem. The special agent followed the van, and saw a Riverside police officer (hereinafter "officer") attempt to stop it, but one of the other cars that was riding in tandem with it tried to block this. The van moved over in response to the officer's attempt to stop it, then took off.

An investigator for the United States Department of Homeland Security (hereinafter "investigator") testified at the same hearing that he was in the area of the townhouse during the surveillance, but not at the townhouse. He was told that the van

2

had left the house, then he saw the van leave the neighborhood. After the van got on the freeway, and while it was stuck in traffic and going less than 20 miles per hour, in tandem with one of the cars seen by the special agent, he saw, through the window of the van, packaging consistent with large bundles of marijuana. He also saw a male Hispanic, who was wearing either bright orange or bright yellow[1] clothes, similar to those worn by highway construction workers, driving the van, and it was the defendant. He asked the officer to make a traffic stop of the van and watched as she drove up behind the van and activated her lights, only to have the van driver speed away and drive erratically. The officer put on her siren and pursued the van. The investigator could not keep up with the pursuit.

The officer testified at the same hearing that she was in uniform in a marked patrol unit when she attempted to stop the van by putting on all her lights and siren. The van driver was a male wearing a baseball cap, which she could see through the van's rear window. The van's right blinker went on, and it looked like it was going to pull over onto the right shoulder, but, instead, it sped off, going over 110 miles per hour and cutting across lanes and onto both shoulders in heavy traffic, causing other drivers to have to brake and move over to avoid colliding with it. A video of the pursuit was shown to the magistrate. The officer lost sight of the van, but could see and follow its dust trail. She got off the freeway and went to a grocery store where she had heard over the radio

---

[1] He could not tell the exact color due to the tint on the van's windows.

3

the van had gone. An employee came out of the grocery store and pointed her to the inside of the store. Once inside, she and the special agent were directed towards the dairy case. They approached the aisle that led to the dairy case from opposite directions and saw defendant with containers of milk in his hands, walking down the aisle.

The special agent testified that he caught up with the end of the pursuit at the grocery store. The officer's marked unit and special agent's car, both with their lights activated and their sirens on, were parked at the front door of the store. Also, there was a police helicopter hovering 500 feet overhead. The special agent had been given a description of the driver as an Hispanic male. He and the officer entered the store "almost at a sprint" and were asking people if anyone had come into the store. The special agent had his badge around his neck and he had his gun exposed. He opined that people in the store "knew that something was going on." He went to the rear of the store where he ordered defendant, who was looking at items on the shelf, in spite of the commotion, to put down the two gallons of milk defendant was holding and he handcuffed him.

The investigator testified that the van he had seen earlier during the pursuit was parked behind the grocery store. Inside were bindles of what the investigator believed was marijuana. Also in the van was an orange or yellow skull cap. The person brought

out of the store in custody was the same person he had seen driving the van earlier, and was defendant,[2] although, at this point, defendant was wearing dark clothes.

The officer also testified that inside the van were plastic-wrapped bundles of what she believed was marijuana. In fact, it was marijuana. Another officer found in the grocery store and showed to this officer a shirt and a bright, perhaps orange, baseball cap.

The special agent testified that he found the keys to the van and an orange shirt behind the meat/seafood counter inside the grocery store.

At the conclusion of this hearing, the magistrate found that there was "probable cause" for detaining defendant inside the store, that his identification outside the store by the investigator occurred relatively quickly after the detention inside and, presumably, at that point, there was probable cause to arrest him.

Defendant renewed his motion to suppress after he had been bound over for trial. In his motion, defendant argued that there was insufficient probable cause to arrest him, if the handcuffing in the store could be considered an arrest, and there was insufficient reasonable suspicion to detain him if it could be considered a detention. In their written opposition to defendant's motion, the People argued *solely* that a de facto arrest, done to facilitate an in-field identification, does not require probable cause to arrest. They added, "The defendant was brought outside where [the investigator] was present. [M]oving the

---

**2** In his written first motion to suppress, defendant apparently confused the investigator and the special agent when asking that the latter's identification of defendant during an "in-field show up" be suppressed.

5

defendant from inside the store to the outside would have allowed for his early release if [the investigator] could not identify the defendant as the driver [of the van]. . . . [P]robable cause to arrest did not have to exist to transport the defendant outside of [the store]. Thus, it was reasonable to transport the defendant outside for identification by [the investigator]." Defense counsel did not respond to this argument in writing and he had not addressed it in his renewed motion, except to the extent that he asserted that there was insufficient reasonable suspicion to detain defendant inside the store. At the hearing on the renewed motion, defense counsel and the trial court noted that the trial court and counsel had discussed the matter in chambers. Both counsel submitted the matter based on their written motions. The trial court asked defense counsel, " . . . [I]t seemed like there were two different situations, one was taking [the defendant] and transporting him for the in-field showup, correct? . . . [T]hen there was I think an additional basis also . . . ." Defense counsel interrupted the trial court saying, " . . . [R]ight, . . . our argument is it was [an] unlawful detention. . . . Our [motion] attacks both the probable cause and the reasonable suspicion for the detention, and also the racial profiling, which would make that an unlawful articulable fact, just the nature of the ethnicity with[out] anything specific as to [the] defendant."[3] Without taking additional evidence, the trial court concluded that whether cuffing defendant inside the store "is called" or

---

[3] What defendant argued in his moving papers was that all the special agent knew about the van driver was that he was an Hispanic male and a defendant's ethnicity, "in the face of a lack of particularized evidence pointing to the defendant" "may not be used to 'justify' a detention . . . ."

"characterized" as a detention or an arrest, given the high speed pursuit that ended at the store where defendant was located, it was reasonable for him to be taken into custody after the investigator identified him as the van driver outside the store. As is fairly apparent, the trial court agreed with the People's argument that defendant was detained inside the store to be taken outside to see if he could be identified in the show-up.

Defendant here contests the trial court's ruling. We defer to the trial court's factual findings, express or implied, if they are supported by substantial evidence and determine the reasonableness of the seizure de novo. (*People v. Glaser* (1995) 11 Cal. 4th 354, 362.)

Defendant points out that an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop and it is "'"'the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.'"' [Citations.]" (*In re Antonio B.* (2008) 166 Cal.App.4th 435, 440 (*Antonio B.*); *People v. Soun* (1995) 34 Cal.App.4th 1499, 1516 (*Soun*).) From this, defendant extrapolates "the rule," without citation to further authority, that the People have the burden of producing evidence that the person was seized "for the purpose of furthering an ongoing investigation" and not for the purpose of taking that person into custody. However, neither *Antonio B.* nor *Soun* so holds.

In *Antonio B.*, the officer who cuffed the minor testified variously that it was his policy and procedure to handcuff suspects who were being detained for investigative

7

purposes and it was his procedure to handcuff anyone who was being detained for "a period of time," knowing that the person was going to be arrested. (*Antonio B*., *supra*, 166 Cal.App.4th at p. 439.) The appellate court said, "The question presented is whether the conduct of the officer[] in handcuffing [the minor] transformed the valid detention into an invalid arrest. . . . [¶] . . . We look to 'the facts known to the officer[] in determining whether [his] actions went beyond those necessary to effectuate the purpose of the stop, that is, to quickly dispel or confirm police suspicions of criminal activity.' [Citation.]" (*Id*. at p. 441.) The appellate court pointed to cases holding that cuffing was reasonable, and, therefore, did not turn an investigative detention into an arrest, where the detainee matched the description of someone who had committed a violent felony, was suspected to be armed, was seen leaving the scene of the crime, might flee,[4] threatened the officer or was going to be transported to another location for possible identification. (*Id*. at pp. 441-442.) Because there was testimony in *Antonio B*. that the detention was for the purpose of further investigation, the appellate court had no cause to hold, and did not hold, that the People had the burden of proving that the detention was for an investigative purpose.

---

[4] For defendant to argue, as he does, that handcuffing him converted what may have been a detention into an arrest because it was unnecessary flies in the face of the cases cited in *Antonio B* in which the defendants might have fled. Here, if the officers were correct and defendant was the van driver, he had already fled. Moreover, like in other cases cited in *Antonio B*., defendant here had already disobeyed orders by the officer to pull over.

8

The same is true of *Soun*, where the defendant was detained by one law enforcement agency so he could be questioned by another agency that had jurisdiction over the crimes he was suspected of having committed. (*Soun*, *supra*, 34 Cal.App.4th at p. 1514.) As in *Antonio B*., the focus was on the intrusive nature and length of the detention. (*Soun*, at p. 1517.) There was no evidence deduced that the detention was for investigative purposes, as this fact was apparent from the circumstances. Therefore, there is no authority supporting defendant's position that the People had the burden below of showing that it was the intent of the special agent and the officer, when they handcuffed defendant and took him outside, to have him put in a show-up for identification by the investigator.

Next, defendant reasserts a point he actually argued below, i.e., that when he was handcuffed, there was insufficient evidence of a reasonable suspicion that he was the driver of the van. We disagree. The driver of the van had been pursued to the grocery store. The actions of the people outside and inside the store pointing the way to where defendant was, suggested that he was the suspect. Defendant's attempts to act as though commotion was not going on in the store also created reasonable suspicion that he was the van driver. He was a male Hispanic, as was the driver. Contrary to defendant's assertion, he was not detained merely because he was an Hispanic male. It was merely a factor linking him with the description of the van driver.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____
P. J.

We concur:

HOLLENHORST _____
J.

CODRINGTON _____
J.

10